## FAKE *vs.* WHIPPLE and GRANT.

A town collector, on receiving a tax warrant, is *prima facie* chargeable with the amount of money therein directed to be collected by him; and it is incumbent upon him to discharge himself in some one of the modes pointed out by the statute or recognized by the law.

If he fails to execute the warrant by returning to the county treasurer all the sums therein directed to be paid to such treasurer, he is *prima facie* chargeable with the amount of the deficiency; and if the sheriff, on a warrant being issued to him, for that purpose, by the county treasurer, is not able to collect the deficiency out of the collector's property, the sureties in the collector's bond are *prima facie* liable for the debt.

In an action upon the collector's bond, for his default in not paying over to the county treasurer all the moneys directed in the tax warrant to be paid to him, the burthen of proof is upon the defendants to show that the failure to pay arose from the collector's inability to obtain the sum deficient, except by compulsory measures, against the tax-payers.

Where the default of the collector is sought to be excused on the ground that the tax warrant was not delivered to him within the time contemplated by law, so as to enable him by compulsory measures to enforce the same against delinquent tax-payers, it is obligatory upon the defendants to show that the defalcation arose from the inability of the collector to collect, by reason of the lapse of the return day of the warrant before he was entitled to institute proceedings for the forcible collection of the taxes. If they fail to do so, the sureties are liable upon the bond.

Sureties, after having executed a bond in which their principal is recited as being collector of the town, and as having received, as such, the assessment roll of the town for the purpose of collecting the taxes therein named, are estopped from denying the fact that he was such collector, *it seems*

Where no exception is taken by the successful party to a finding of the court below upon a question of fact, nor any attempt made to review it in any mode known to the law, for the purposes of the hearing upon appeal the finding must be taken as true, and the party will be precluded from insisting upon the contrary.

APPEAL from a judgment at the circuit. The action was brought by the supervisor of the town of Lansingburgh, in the county of Rensselaer, against Henry S. Tracy, collector of said town, and Jonathan E. Whipple and Isaac T. Grant, the sureties of said collector in his official bond. The action was originally brought by James I. Adams, as supervisor of said town; and the appellant, as successor of Adams in that office, is substituted as plaintiff. The plain-

tiff claims to recover the sum of $860, on said bond, as the amount for which the collector is in default, and for which he and his sureties are liable on said bond. The cause was tried before Hon. GEORGE GOULD, one of the justices of this court, without a jury, in the month of February, 1860, at the Rensselaer circuit. On the trial it was admitted that James I. Adams was duly elected supervisor of the town of Lansingburgh, for the years 1857 and 1858, and was duly qualified; and that Henry S. Tracy was also duly elected collector of said town, for said years, and was duly qualified; and these facts were found by the court.

The due execution of the bond in suit, by the collector and his sureties, which was for the faithful execution by said Tracy of the duties of collector, and was dated on the 23d of January, 1858, and the approval of the bond by the supervisor, and his filing it with the county clerk were proved, and were found by the court. The bond was given in evidence without objection. The corrected assessment roll, with the warrant annexed, duly signed and sealed, for the town of Lansingburgh, for the year 1857, was proved and given in evidence. And the same was proved to have been delivered by the clerk of the board of supervisors of Rensselaer county, for the year 1857, to James I. Adams, then supervisor for the town of Lansingburgh. The assessment was completed by the board of supervisors on the 20th of January, 1858, on which day the board adjourned. On or about the 23d of January, 1858, and after the bond executed by Tracy and his sureties had been delivered to Adams, the supervisor, and after Adams had stated to Tracy his approval of the sureties, and that they were *satisfactory*, the supervisor delivered the corrected assessment roll, and warrant annexed, to the collector. The warrant directed the payment of the moneys, therein specified to be made by the collector, on or before the first day of February then next. The bond, after having been delivered to Adams, the supervisor, was retained in his possession until 27th May, 1858, when he

Fake *v.* Whipple.

signed his approval on it and filed it with the clerk of Rensselaer county, who entered it in the book kept for that purpose in his office. On the 19th day of January, 1858, the board of supervisors passed a resolution, extending the time for the collection of taxes in the towns of the county of Rensselaer, until the first day of March, 1858, *provided* the collectors should *pay* in to the county treasurer all moneys by them received at the expiration of the first *thirty days* after receiving their warrants. Tracy, the collector, was informed of this resolution. After receiving the warrant, the collector proceeded to collect the taxes under it; and a considerable amount was collected in the month of February, 1858. They appear to have been voluntary payments. The warrant required him to collect and pay over to the *county treasurer* the sums of $4309.42 and $8866.93, amounting in all to the sum of $13,176.35. He proved on the trial, by receipts of the county treasurer, only the following sums to have been paid to the latter at the dates, as follows:

| | |
|---|---:|
| March 3, 1858, . . . . . | $7485 80 |
| April 12, 1858, . . . . . . | 4531 73 |
| May 14, 1858, . . . . . | 130 32 |

Amounting in all to . . . $12,147 85

Being less than the amount required, by $1028.40; and it was admitted "*that the collector, Tracy, failed to execute the warrant, (by returning to the county treasurer all the sums therein directed to be paid to the county treasurer,) to the extent of $860.*" On the 4th of June, 1858, the treasurer of Rensselaer county issued his warrant to the sheriff of that county for the collection of $860, the amount of the defalcation of the collector. On the 8th June, 1858, the sheriff returned the warrant unsatisfied, for want of goods, etc., whereon to levy, he having in vain endeavored to collect the money as directed by the warrant. After the return of the warrant of the county treasurer unsatisfied, the supervisor, having been notified of the fact by the treasurer;

commenced this suit. The judge dismissed the complaint as to the sureties, principally on the ground that the warrant was not delivered to the collector within the time contemplated by law, so as to enable him, by compulsory measures, to enforce the same against delinquent tax-payers. The plaintiff duly excepted.

A judgment was entered against Henry S. Tracy, by default, for $986.12, damages and costs; and as to the defendants Whipple and Grant, the complaint was dismissed, with costs to those defendants. From this judgment the plaintiff appealed to the general term.

*D. L. Seymour*, for the plaintiff, (appellant.)

*W. A. Beach*, for the defendants, (respondents.)

*By the Court,* HOGEBOOM, J. I am of opinion that the collector on receiving the tax warrant is prima facie chargeable with the amount of money therein directed to be collected by him; and that it is incumbent upon him to discharge himself in some one of the modes pointed out by the statute or recognized by the law. As soon as such warrant is delivered, an account thereof is required by law to be transmitted by the board of supervisors to the county treasurer, "and the county treasurer on receiving such accounts shall charge to each collector the sums to be collected by him." (1 *R. S. 5th ed.* 915, § 37.) The collector on paying over the sums by the tax warrant directed by him to be paid, is to take duplicate receipts—"one of which duplicates shall be filed by the collector with the county treasurer, and shall entitle him to a credit on the books of the county treasurer for the amount therein stated to have been received by the county, and no other evidence of such payment shall be received by the county treasurer." (1 *R. S. 5th ed.* 920, § 15. *See also Muzzy* v. *Shattuck,* 1 *Denio,* 233.) If the collector neglect or refuse to pay the sums required by the war-

Fake *v.* Whipple.

rant to be paid by him, or to account for the same as unpaid, the county treasurer is required to issue his warrant to the sheriff to collect the deficiency out of the property of the collector. (1 *R. S. 5th ed.* 222, § 26.) If the sheriff is unable to collect the whole of such deficiency, he is to make return accordingly, and the county treasurer is thereupon to notify the supervisor, who is then required to put in suit the collector's bond, and is entitled to recover the amount of such deficiency, with costs of suit. (1 *R. S. 5th ed.* 923, §§ 29. 30.) "If any of the taxes mentioned in the tax list annexed to his warrant shall remain unpaid, *and the collector shall not be able to collect the same,* he shall deliver to the county treasurer an account of the taxes so remaining due, and upon making oath before the county treasurer, or, in case of his absence, before any justice of the peace, that the sums mentioned in such account remain unpaid, and that he has not, upon diligent inquiry, been able to discover any goods or chattels belonging to or in the possession of the persons charged with or liable to pay such sums, *whereon he could levy the same,* he shall be credited by the county treasurer with the amount thereof." (1 *R. S. 5th ed.* 921, § 19.)

In this case it was admitted by the defendants, on the trial, "that the collector, Tracy, failed to execute the warrant, (by returning to the county treasurer all the sums therein directed to be paid to the county treasurer,) to the extent of $860." He was therefore prima facie chargeable with that sum, and the sheriff, not having been able to collect the same out of his property, his bond was properly put in suit, and the obligors therein were prima facie liable for the debt.

It is insisted on the part of the defendants that inasmuch as the warrant was not received by the collector till the 23d of January, 1858, and by its terms was returnable on the first of February succeeding, the collector had not time to enforce the collection of the taxes before the return day of the warrant, inasmuch as it would require six days, at least,

to make such compulsory collection after the expiration of the thirty days allowed for voluntary payments, (1 *R. S. 5th ed.* 917, 918, §§ 1, 7, 8,) and as he would have no right, any more than a constable or a sheriff, to make a *levy* under his warrant after the return day had passed.

I think the answer to this is, 1. That for aught that appears he had received this sum of $860, in voluntary payments from the tax-payers, before (or after) the 1st of February, 1858; and that the *burthen of proof* lay upon *him* to show that the failure to pay over the $860 arose from his inability to obtain that sum except by compulsory measures against the tax-payers. 2. That he could probably have entitled himself to a credit with the county treasurer for this sum of $860, (if, in fact, arising from inability to collect, by levy and sale of property, for want of authority by reason of lapse of time,) by making oath as to such *inability* under the 19th section, already quoted. I say *probably*, because there may be some question whether the section contemplates an inability to collect by levy and sale, on account of the return day of the warrant having passed; and yet it would be true that in such a contingency he had " not, upon diligent inquiry, been able to discover any goods or chattels belonging to, or in the possession of, the persons charged with or liable to pay such sums, *whereon he could levy the same.*" In *Van Rensselaer* v. *Snyder*, (3 *Kern.* 299,) the court of appeals held that the section of the revised statutes which provided for an ejectment suit by a landlord, where a half-year's rent was in arrear, " and no sufficient *distress* can be found on the premises to satisfy the rent due," was applicable to and authorized an action of ejectment in a case arising after the abolition of distress for rent, by the act of 1846, notwithstanding there might be upon the premises a sufficiency of goods and chattels to satisfy the rent, and which, but for the abolition of the right of distress, might have been distrained for that purpose. The decision was put upon the ground that there was not upon the premises suffi-

Fake *v.* Whipple.

cient property "subject by law to be distrained and sold in satisfaction of the rent in arrears." (*P.* 303.) A similar train of reasoning would lead to the conclusion, in this case, that to prevent the collector from obtaining credit for the deficiency of $860, there must not only have been sufficient goods and chattels to satisfy the tax, but sufficient at the time he was authorized to levy, subject by law to be levied upon and sold in satisfaction of the taxes in arrear. At all events, I think it was obligatory upon the defendants to show that the defalcation of the collector arose from his inability to collect, by reason of the lapse of the return day of the warrant before he was entitled to institute proceedings for the forcible collection of the taxes. Failing to do so, I think the defendants were liable, unless they are excused for some other reason.

It is claimed by the defendants that Tracy never became collector, and, therefore, that they are not liable for his defalcations. It may well be doubted whether, after having executed a bond in which he is recited as being collector, and as having received, as collector, the assessment roll of the town of Lansingburgh for the purpose of collecting the taxes therein named, they are not estopped from denying that fact. (*Hall* v. *Luther*, 13 *Wend.* 491. *People* v. *Falconer*, 2 *Sandf.* 81. *Lee* v. *Clark*, 1 *Hill*, 56.) But, I think, for another reason the defendants are not in a situation to raise the point. They succeeded on the trial in the court below, and they rest satisfied with the decision there, which was, among other things, that Tracy for the years 1857 and 1858 was collector of the town of Lansingburgh, duly qualified and acting as such collector. No exception has been taken by the defendants to this finding, nor any attempt made to review it in any mode known to the law. For the purposes of this hearing it must therefore be taken as true, so far as it has been submitted to by the successful party at the trial. For if the judge had not been with the plaintiff in that particular, for aught we know, the plaintiff might have supplied

other evidence, or the admissions of the defendants of that fact. The defendants are therefore precluded from insisting upon that point.

There are no other questions which seem to be important to be examined; and inasmuch as the court below decided that the assessment roll and warrant were void, because not delivered within the time contemplated by law, and necessary to justify the compulsory collection of the taxes, and also decided that the defendants, Whipple and Grant, were not liable in this action, and that, as to them, the complaint should be dismissed; I am of opinion that the judgment of the circuit court should be *reversed,* and a new trial granted, with costs to abide the event.

[ALBANY GENERAL TERM, December 1, 1862. *Hogeboom, Peckham* and *Miller,* Justices.]